COUNTY ROAD ASSOCIATION OF MICHIGAN v BOARD OF STATE
CANVASSERS

MICHIGAN ROAD BUILDERS ASSOCIATION, INC v BOARD OF
STATE CANVASSERS

Docket Nos. 43001, 43126. Submitted March 6, 1979, at Lansing.—De-
cided March 30, 1979. Leave to appeal and cross appeal
granted, 406 Mich 982.

The County Road Association of Michigan and others and Michigan
Road Builders Association, Inc., and others brought original
actions for mandamus in the Court of Appeals against the Board of
State Canvassers seeking permanently to restrain the defendant
from declaring the sufficiency of petitions to refer to referendum
vote at the 1980 general election the 1978 public act which in-
creases taxes on gasoline and diesel fuel (1978 PA 426) and the 1978
public act which increases weight (registration) taxes on most mo-
tor vehicles (1978 PA 427). The People Against Higher Taxes inter-
vened as defendants in these actions.

On January 12, 1979, the Court of Appeals entered an order to
show cause and set the matters for expedited submission on March
6, 1979. The Court also enjoined the Board of State Canvassers
from certifying the sufficiency or insufficiency of the petitions dur-
ing this proceeding.

The two actions were consolidated for hearing. *Held:*

1. An act is not subject to referendum if the act, by itself or when
read *in pari materia* with other acts, makes an appropriation for a
state institution.

2. The 1978 public act which increased the taxes on gasoline and
diesel fuel does make an appropriation for a state institution, the

REFERENCES FOR POINTS IN HEADNOTES

[1,3,10] 42 Am Jur 2d, Initiative and Referendum § 15.
Construction and application of constitutional or statutory provisions
expressly excepting certain laws from referendum. 100 ALR2d 314.
[2] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 13, 200.
[4] 42 Am Jur 2d, Initiative and Referendum § 12.
[5] 73 Am Jur 2d, Statutes § 187.
[6] 73 Am Jur 2d, Statutes § 194.
[7] 42 Am Jur 2d, Initiative and Referendum § 5.
[8] 73 Am Jur 2d, Statutes § 178.

Department of State Highways and Transportation. Therefore, this act is not subject to referendum.

3. The power of referendum may be properly invoked to challenge the act which increases the weight tax for most motor vehicles registered in the state. This act does not make an appropriation to a state institution. Therefore, this act is subject to referendum.

An order of mandamus to issue as to 1978 PA 426. Mandamus will not issue as to 1978 PA 427.

M. F. CAVANAGH, P.J., concurred in part and dissented in part. He agrees that the act raising taxes on gasoline and diesel fuel makes an appropriation to a state institution and is not subject to referendum. However, he would also hold that the act which increases the weight taxes on motor vehicles must be read as part of a comprehensive system appropriating monies for highway purposes and thus indisputably appropriates funds for a state institution and is not subject to referendum. He would issue mandamus permanently restraining the defendant from certifying the sufficiency of the petitions as to both of the acts.

OPINION OF THE COURT

1. STATUTES — IN PARI MATERIA — APPROPRIATION ACTS — STATE INSTI-
    TUTIONS — REFERENDUM.

    An act which, by itself or when read *in pari materia* with other acts, makes an appropriation for a state institution is not subject to referendum.

2. ADMINISTRATIVE LAW — DEPARTMENT OF TRANSPORTATION — EXECU-
    TIVE BRANCH OF GOVERNMENT — STATE INSTITUTIONS.

    The Department of State Highways and Transportation is one of the principal departments of the executive branch of state government and is clearly a state institution.

3. TAXATION — GASOLINE TAX — APPROPRIATION — STATUTES — PUBLIC
    ACTS — REFERENDUM — STATE INSTITUTIONS.

    The 1978 public act which, among other things, raised the tax on gasoline from nine cents per gallon to eleven cents per gallon and the tax on diesel fuel from seven cents per gallon to nine cents per gallon is an act which makes an appropriation for a state institution and, therefore, is not subject to referendum (1978 PA 426).

4. TAXATION — WEIGHT TAXES — MOTOR VEHICLES — STATUTES — PUB-
    LIC ACTS — REFERENDUM — APPROPRIATIONS — STATE INSTITU-
    TIONS.

    The 1978 public act which increased weight taxes on most motor ve-

hicles does not make an appropriation for a state institution and is not to be read *in pari materia* with any other acts which make appropriation for state institutions and, therefore, is subject to referendum (1978 PA 427).

5. Statutes — Statutory Construction — In Pari Materia.
   *In pari materia* is a rule of statutory construction used to ascertain legislative intent.

6. Statutes — Statutory Construction — Ambiguity.
   Rules of statutory construction should not be invoked where legislation is not ambiguous or conflicting.

7. Constitutional Law — Statutes — Referendum Provisions — Liberal Construction.
   Constitutional and statutory initiative and referendum provisions should be liberally construed to effectuate their purposes and to facilitate rather than hamper the exercise by the people of these reserved rights.

Partial Concurrence and Partial Dissent by M. F. Cavanagh, P.J.

8. Statutes — Amendments to Acts — System of Legislation.
   *Amendments to an act are to be viewed with the original act as constituting a system of coherent legislation.*

9. Statutes — In Pari Materia — Legislative Purpose.
   *The doctrine of* in pari materia *is implicitly a development of the judicial belief that legislators do not legislate in a vacuum; where separate laws involve the same subject matter and purpose they should be viewed as part of one system to carry out the legislative purpose.*

10. Taxation — Gasoline Taxes — Weight Taxes — Motor Vehicles — Statutes — Public Acts — System of Legislation — Referendum.
    *The 1978 public act which raised taxes on gasoline and diesel fuel and the 1978 public act which increased weight taxes on most motor vehicles are part of an overall legislative scheme the purpose of which, in part, is to appropriate funds to state institutions; therefore, both of the public acts, as acts making appropriations to state institutions, are exempt from referendum (1978 PA 426, 1978 PA 427).*

*Downs, Pirich & Downs, P.C.,* for plaintiff County Road Association of Michigan.

*Butzel, Long, Gust, Klein & Van Zile* (by *William M.*

*Saxton, John B. Weaver* and *James E. Stewart),* for plaintiff Michigan Road Builders Association, Inc.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Varda N. Fink,* Assistant Attorney General, for defendant.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.,* for intervening defendant.

Before: M. F. CAVANAGH, P.J., and BASHARA and D. E. HOLBROOK, JR., JJ.

BASHARA, J. These consolidated actions seek an order of mandamus to permanently restrain the Board of State Canvassers from declaring the sufficiency of petitions to refer 1978 PA 426 and 1978 PA 427 to referendum vote at the November 1980 general election.

1978 PA 426 amends §§ 2, 12, 18b, 22, 34, 64, 86 and 93 of 1927 PA 150, as amended, the gasoline and diesel motor fuel tax act, MCL 207.101 *et seq.;* MSA 7.291 *et seq.* Among other things, the act raises the tax on gasoline from nine cents to eleven cents per gallon (§ 2) and the tax on diesel fuel from seven cents to nine cents per gallon (§ 22).

1978 PA 427 amends §§ 801, 801e, 802 and 803a of 1949 PA 300, as amended, which is chapter VII of the Michigan vehicle code, MCL 257.1 *et seq.;* MSA 9.1801 *et seq.* 1978 PA 427 increases weight (registration) taxes on most motor vehicles, with the heaviest increases falling on automobiles and pick-up trucks.

On January 2, 1979, People Against Higher Taxes filed referendum petitions on 1978 PA 426. On January 9, 1979, they filed referendum petitions on 1978 PA 427.

The County Road Association of Michigan commenced this action January 3, 1979. The Michigan Road Builders Association filed a similar action January 12, 1979. On that date, this Court entered an order to show cause and set the matter for expedited submission on March 6, 1979. The Court also enjoined the Board of State Canvassers from certifying the sufficiency or insufficiency of the petitions during this proceeding.

Plaintiffs contend that the acts make an appropriation for a state institution and, therefore, are not subject to referendum under that part of Const 1963, art 2, § 9, which provides, "The power of referendum does not extend to acts making appropriations for state institutions."

Motor vehicle fuel tax increases in this state have frequently been challenged. See *Detroit Automobile Club v Secretary of State,* 230 Mich 623; 203 NW 529 (1925), *Moreton v Secretary of State,* 240 Mich 584; 216 NW 450 (1927), *Michigan Good Roads Federation v State Board of Canvassers,* 333 Mich 352; 53 NW2d 481 (1952), *Boards of County Road Comm'rs v Board of State Canvassers,* 50 Mich App 89; 213 NW2d 298 (1973), *aff'd,* 391 Mich 666; 218 NW2d 144 (1974). Those cases establish the proposition that if the challenged act, by itself or when read *in pari materia* with other acts, makes an appropriation for a state institution, then the act is not subject to referendum. Plaintiffs contend that 1978 PA 426, either by itself or when read *in pari materia* with 1978 PA 427 and 444, is an act making an appropriation for a state institution.

Specifically, 1978 PA 426 amends chapter 2, § 34 of 1927 PA 150, as amended, the gasoline and diesel motor fuel tax act to provide for disposition of diesel motor fuel taxes, as follows:

"All sums of money received and collected by the secretary of state under this chapter, except the license fees herein provided, shall be deposited in the state treasury to the credit of the Michigan transportation fund, and after the payment of the necessary expenses incurred in the enforcement of this chapter shall be *appropriated, allocated and apportioned therefrom* to the department of transportation, the several county road commissions and incorporated cities and villages of the state in the manner and for the specific highway purposes prescribed by law." MCL 207.134; MSA 7.316(14). (Emphasis added.)

The above emphasized language is sufficient language of appropriations to make 1978 PA 426 an appropriations act under the definition adopted and approved by this Court in *County Road Comm'rs v Board of State Canvassers, supra.* In that case, the Court said:

"In Black's Law Dictionary (4th ed), p 131, an appropriation in public law is defined as follows: .

" 'The act by which the legislative department of government designates a particular fund, or sets apart a specified portion of the public revenue or of the money in the public treasury, to be applied to some general object of governmental expenditure, or to some individual purchase or expense.'

"Applying Black's definition of the word appropriation to § 18b would in our opinion qualify it as an appropriations act." 50 Mich App at 95-96.

Section 18b, construed to be an appropriations act by the Court in the prior case, read:

"All sums of money received and collected under the provisions of this act, except the license fees provided for herein and after the payment of the necessary expenses incurred in the enforcement of this act, shall be deposited in the state treasury to the credit of the motor vehicle highway fund." MCL 207.118b; MSA 7.308(2).

Section 18b was again amended by 1978 PA 426, essentially to change the name of the Motor Vehicle Highway Fund to the Michigan Transportation Fund.

If former § 18b is construed as an appropriations act, then even more so can § 34 of 1978 PA 426 be considered an appropriations act because of the specific mandatory provision, *"shall be appropriated,* allocated and apportioned therefrom." (Emphasis added.)

Although in the prior case this Court declined to hold that the Motor Vehicle Highway Fund, referred to in § 18b, was a state institution, the Department of State Highways and Transportation in present § 34 is clearly a state institution. The Department of State Highways and Transportation is one of the principal departments of the executive branch. See § 4 of the Executive Organization Act, as amended by 1978 PA 483, MCL 16.104; MSA 3.29(4). Furthermore, most of the prior gas tax cases expressly recognize that the former State Highway Department, county road commissions and/or cities and villages are state institutions within the meaning of the constitution.

In addition, § 34 of 1978 PA 426 makes the act an appropriation for a state institution on grounds suggested but not utilized as definitive by this Court in *County Road Comm'rs v Board of State Canvassers, supra.* In that case, this Court said:

"A more tenable position for plaintiffs to stand on in relation to this issue would be to assert that 1972 PA 326 is but a part by amendment of 1927 PA 150. Without question 1927 PA 150, as amended by 1951 PA 54 and 1967 PA 5 (Ex Sess), is an appropriations act in which appropriations are made to state institutions in §§ 34 and 91. It is, of course, an axiom of statutory construction that an amendatory act is construed in the context of the act which it is designed to amend, the policy being to harmonize and give effect to all legislative language whenever possible. *Doyle v Election Commission of the City of Detroit,* 261 Mich 546; 246 NW 220 (1933), *Fowler v Board of Registration in Chiropody,* 374 Mich 254; 132 NW2d 82 (1965).

"Although it appears that standing on this premise we could justifiably rule that the act is not subject to referendum, we do not predicate our decision on this added premise because we do not deem it necessary in view of our subsequent determination." 50 Mich App at 99-100. (Footnotes omitted.)

In this case, 1978 PA 426 amends § 34 in language nearly identical to 1951 PA 54 which this Court held in the prior case "without question * * * is an appropriations act in which appropriations are made to state institutions in §§ 34 and 91". 50 Mich App at 99-100.

We reject defendants' contention that 1978 PA 426 cannot be held to be an appropriation act without violating Const 1963, art 4, § 31. That section is inapplicable because 1978 PA 426, 427 and 444 were part of general appropriation bills as defined by Const 1963, art 4, § 31, and those bills were part of the Governor's budget. Article 4, § 31 seeks to avoid the passage of appropriation bills for items *not in the budget* before general appropriation bills for items in the budget are approved.

Defendants also contend that § 34 does not take effect in the next ensuing fiscal year and is therefore just an authorization or merely the expression of an intention to appropriate. Defendants cite *Board of Education of Oakland*

*Schools v Superintendent of Public Instruction,* 392 Mich 613; 221 NW2d 345 (1974), in support of that proposition.

However, in that case the specific appropriation made was vetoed by the Governor and only the enabling act was passed. School board appropriations are made on a year-by-year basis. Our Supreme Court determined that the bill was in conflict with Const 1963, art 4, § 31, and art 5, § 18, since the Legislature could not accurately forecast available revenues to balance the appropriations. In the instant case, no more is appropriated than the actual net revenue from the tax. The statute here in question is clearly distinguishable from that in *Board of Education, supra.* We also note that the Supreme Court there indicated that it was not passing upon the validity of a continuing appropriation. Furthermore, we allude to the definition of an appropriation in public law as found in Black's Law Dictionary, and in *County Road Comm'rs, supra,* previously cited in this opinion.

Accordingly, we conclude that 1978 PA 426 is an act which makes an appropriation for a state institution and, therefore, is not subject to referendum.[1]

1978 PA 427 does not make an appropriation for a state institution and is subject to referendum, unless that act is to be read *in pari materia* with 1978 PA 426 and 444.

1978 PA 444 extensively amends 1951 PA 51, the classification of roads act, as amended, MCL 247.651 *et seq.;* MSA 9.1097(1) *et seq.* 1978 PA 444 not only contains clear appropriation language to the Department of State Highways and Transportation, but § 10 thereof specifically refers to, incorporates and appropriates, among others, the gas tax increases of 1978 PA 426 and the weight tax increase of 1978 PA 427. If the doctrine of *in pari materia* applies, 1978 PA 444 is the catalyst.

The doctrine of *in pari materia* was used by the Courts in *County Road Comm'rs v State Canvassers, supra,* and in *Good Roads Federation v Board of Canvassers, supra.* In those cases, the acts involved were passed on the same day

[1] Although we find the right of referendum inapplicable to 1978 PA 426, it should be noted that the people of the State of Michigan may always institute a petition to amend the constitution or propose an initiative petition on any issue, regardless of its fiscal implications.

and contained tie-bars to each other. In the present case, the acts were not passed on the same day and contain no tie-bar provisions. 1978 PA 426 and 427 were approved September 30, 1978, but 1978 PA 444 was not approved until October 10, 1978. Moreover, none of those acts has tie-bar provisions. Even more significant than that is the fact that as originally introduced and in subsequent legislative versions, those three acts did have tie-bar provisions which were deleted when the acts were finally passed.

In affirming this Court's denial of referendum in *County Road Comm'rs v State Canvassers,* the Supreme Court did so reluctantly only because of the past construction of the constitutional referendum language in *Detroit Automobile Club, Moreton,* and *Good Roads, supra.* The Court noted:

"The construction placed by this Court on this exception to the right of referendum in the 1925 *Detroit Automobile Club,* 1927 *Moreton* and 1952 *Good Roads* cases may, indeed, in many instances deny the people a right to vote on new or increased taxes. If the question were one not previously considered, a different result might obtain. However, the identical question involving substantially the same language has been considered by this Court and settled." 391 Mich at 676.

We are reluctant to extend the referendum exception beyond the prior gas tax cases. *In pari materia* is a rule of construction to ascertain legislative intent. However, rules of construction should not be invoked where the legislation is not ambiguous or conflicting. See 21 Michigan Law & Practice, Statutes, § 81, p 79. Perhaps then the *in pari materia* doctrine should not have been applied in the prior gas tax cases where no allegation was made that the statutes under consideration were ambiguous or conflicting. Therefore, even though the doctrine was utilized in *County Road Comm'rs* and in *Good Roads Federation,* we do not feel that it should be extended to the present case where the acts were neither tie-barred nor approved simultaneously. The principal consideration must be to implement the constitutional right of referendum. In *Kuhn v Dep't of Treasury,* 384 Mich 378, 385; 183 NW2d 796 (1971), the Court said:

"Furthermore, under a system of government based on grants of power from the people, constitutional provisions by which the people reserve to themselves a direct legislative voice ought to be liberally construed. * * * Previous decisions of this Court requiring strict compliance with constitutionally mandated procedures for exercise of the powers of initiative and referendum should not be read as limiting the occasions upon which these powers may be exercised." (Citations omitted.)

In *Michigan Farm Bureau v Secretary of State,* 379 Mich 387, 393; 151 NW2d 797 (1967), the Court said:

"There is nevertheless an overriding rule of constitutional construction which requires that the commonly understood referral process, forming as it does a specific power the people themselves have expressly reserved, be saved if possible as against conceivable if not likely evasion or parry by the legislature."

The same thought was expressed by this Court in *Newsome v Board of State Canvassers,* 69 Mich App 725, 729; 245 NW2d 374 (1976):

"Constitutional and statutory initiative and referendum provisions should be liberally construed to effectuate their purposes, to facilitate rather than hamper the exercise by the people of these reserved rights."

We are thus cautioned by respectable authority against restricting the right of referendum. Accordingly, we decline to apply the doctrine of *in pari materia* to the 1978 acts. As noted earlier, the doctrine probably should not have been applied in prior gas tax cases in the absence of ambiguous or conflicting provisions. Since it was applied in prior cases, however, we must restrict its application to situations, like the prior cases, where the acts were approved on the same day and were tie-barred to each other. Since 1978 PA 426, 427 and 444 were not enacted simultaneously and do not contain tie-bars to each other, we decline to read them *in pari materia.*

*Good Roads Federation* and *County Road Comm'rs, supra,* gave special (perhaps undue) significance to the presence of tie-bar language in those gas tax controversies. Because of the precedential force of those decisions, we are

compelled similarly to give significance to the absence of tie-bar language in this controversy. However, we caution that tie-bar should not be raised to the level of an absolute principle of statutory construction in other contexts. Tie-bar language may be some legislative indication that statutes are intended to be read together; but, tie-bar language or its absence, alone, should not necessarily be controlling in judicial interpretation of legislative intent in other situations.

We conclude, therefore, that 1978 PA 426 is not subject to referendum, but that 1978 PA 427 is. The power of referendum under Const 1963, art 2, § 9, was properly invoked with reference to 1978 PA 427. See 1978 PA 587.

An order of mandamus will issue in 20 days from the date of the release of this opinion permanently to restrain the Board of State Canvassers from certifying the sufficiency of petitions to refer 1978 PA 426 to referendum. In 20 days also, our stay of certification of petitions to refer 1978 PA 427 to referendum will be vacated. Our stay of the certification process remains in effect for that 20-day period.

D. E. Holbrook, Jr., J., concurred.

M. F. Cavanagh, P.J., *(concurring in part, dissenting in part).* To view this controversy in proper perspective, we must bear in mind that the provision which renders the basic right of referendum inapposite is itself an integral part of this state's constitution. This Court has the duty to treat both provisions with equal deference. By the same token, the Legislature cannot, by the mere use of tie-bar language, abrogate either provision. We delude ourselves when we allow the use of sophistic phraseology to determine which constitutional provision controls in any given situation.

While I concur with the majority with respect to 1978 PA 426, I dissent from their conclusion that 1978 PA 427 does not constitute an appropriation to a state institution and is therefore subject to referendum. After careful analysis of the statutory scheme that 1978 PA 427 was designed to amend and of prior Supreme Court interpretations of that scheme, I would conclude that 1978 PA 427 is an inte-

gral part of an act clearly making an appropriation to a state institution and is *not* subject to referendum.

First, it is axiomatic that amendments are to be viewed, with the original act, as constituting a system of coherent legislation. *Fowler v Board of Registration in Chiropody,* 374 Mich 254, 257; 132 NW2d 82 (1965). *Boards of County Road Comm'rs v Board of State Canvassers,* 50 Mich App 89, 100; 213 NW2d 298 (1973), *aff'd,* 391 Mich 666; 218 NW2d 144 (1974). Secondly, the doctrine of *in pari materia* is implicitly a development of the judicial belief that legislators do not legislate in a vacuum; rather where separate laws involve the same subject matter and purpose, they should be viewed as part of one system to carry out the legislative purpose. *Wayne County v Auditor General,* 250 Mich 227, 232-233; 229 NW 911 (1930). Applying these established principles, the conclusion is inescapable that 1978 PA 427 is part of a comprehensive system appropriating monies for highway purposes, established in 1949 and interpreted, as amended, in 1951 in *Michigan Good Roads Federation v State Board of Canvassers,* 333 Mich 352; 53 NW2d 481 (1952).

1949 PA 300, which 1978 PA 427 amends, established, *inter alia,* a schedule of weight taxes (§ 801), collected and deposited these taxes in the state treasury to the credit of the state highway fund and appropriated them for various highway purposes (§ 805). 1949 PA 300, § 810, also deposited various other fees to the credit of the highway fund.

In 1951, 1949 PA 300 was amended in several respects. 1951 PA 51 repealed § 805 and replaced it with PA 51, § 10. Section 10 of this act established the Motor Vehicle Highway Fund (MVHF) and appropriated money credited to the MVHF and received from, among other sources, weight taxes on motor vehicles. 1951 PA 55 also amended 1949 PA 300, § 810, to collect and deposit weight taxes and other fees collected under PA 300 to the credit of the MVHF. 1951 PA 55 contained tie-bar language to 1951 PA 51.

In *Michigan Good Roads Federation v State Board of Canvassers, supra,* at 360-361, the Supreme Court construed 1951 PA 51-1951 PA 55 as a comprehensive system to collect registration and gas taxes and to use them for highway purposes. In that case, the Court read PA 51 and

PA 54 (the appropriation of gas taxes) *in pari materia* to conclude that they could not be treated separately since PA 54 necessarily points to PA 51 as the act distributing the monies appropriated under 1951 PA 54.

This same analysis applies with even greater validity in regard to 1951 PA 55. PA 55 merely credits money to a particular fund. It does not establish the fund nor explain how the money is to be spent. PA 51, to which PA 55 was tie-barred, establishes the Motor Vehicle Highway Fund *and appropriates* the money collected under 1951 PA 55.

To paraphrase the language in *Good Roads,* therefore, 1951 PA 55, provides that it shall not take effect unless PA 51 is enacted. The funds collected in PA 55 and credited to the MVHF could not be appropriated and allocated without PA 51. "Without construing them [51 and 55] together, * * * [these acts] would be unworkable." *Good Roads, supra,* at 360.

The position of 1978 PA 427 in the appropriations and funding framework established by 1949 PA 300, as amended by 1951 PA 55 and as modified by 1951 PA 51, is evident. As of September 30, 1978, the legislation imposing and appropriating weight taxes consisted of 1978 PA 427, amending 1949 PA 300, 1951 PA 55, also an amendment to the 1949 act and, as per the *Good Roads* case, 1951 PA 51. On October 10, 1978, 1951 PA 51 was amended by 1978 PA 444, which indisputably makes an appropriation to a state institution. Based on the foregoing legislative history and established precedent, I would conclude that 1978 PA 427 forms part of a standing appropriation to a state institution whose details are laid out in 1978 PA 444.

Unquestionably, the right of referendum would apply to 1978 PA 426 and 427 unless these acts could be fairly and reasonably construed to constitute appropriations to a state institution. Our Supreme Court has clearly indicated in *Good Roads* that the statutory scheme which the acts before us amend, qualifies them for an exemption from referendum. The absence of tie-bar language between the 1978 acts thus becomes immaterial and makes the existence of a statutory appropriations scheme no less clear. I am persuaded, therefore, that that case requires us to view these acts also as integral parts of an overall legislative scheme and to afford them a similar exemption.